UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| JAMES D. BAKER<br>5426 Jonquil Avenue, Apt. 2<br>Baltimore, Maryland 21215<br><br>    Plaintiff,<br><br>    v.<br><br>CAESARS BALTIMORE MANAGEMENT<br>COMPANY, LLC<br>2711 Centerville Road<br>Wilmington, Delaware 19808<br><br>    Serve on: Resident Agent<br>    CSC-Lawyers Incorporating<br>    Service Company<br>    7 St. Paul Street, Suite 820<br>    Baltimore, Maryland 21202 | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Case No.:<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT & JURY DEMAND**

    Plaintiff, James D. Baker, by and through his attorneys, George A. Rose, Esquire, and Rose Law Firm, LLC, hereby sues Defendant Caesars Baltimore Management Company, LLC, and in support thereof states:

### I.    PARTIES

    1.    Plaintiff James D. Baker (hereinafter "Plaintiff") is a 53-year-old male, and is a resident of the State of Maryland. Plaintiff also has a document disability, and the reasonable accommodation for his disability allows him leave under the Family Medical Leave Act, 29 U.S.C. § 2611 (FMLA).

    2.    At all times pertinent hereto, Defendant Caesars Baltimore Management Company, LLC (hereinafter "Defendant" is a limited liability company, with its principal office located at

2711 Centerville Road, Wilmington, Delaware 19808. Defendant is in the business of supervising, managing, and operating casinos throughout the United States, including the casino pertinent hereto which is where the events giving rise to Plaintiff's claims against Defendant arose, the Horseshoe Baltimore Casino, located at 1525 Russell Street, Baltimore, Maryland 21230.

3. At all times pertinent hereto, Defendant was acting by and through its actual and/or apparent agents, servants, and/or employees for its supervising, managing, and operating the Horseshoe Baltimore Casino, and is the owner of the Horseshoe Baltimore Casino. Thus, hereinafter, when the Horseshoe Baltimore Casino is referenced, the Horseshoe Baltimore Casino will also be referenced as "Defendant".

## II. JURISDICTION

4. This case is brought under Title VII Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq (1964). 29 U.S.C. §621 et seq., and the Americans with Disabilities Act, as amended, 42 U.S.C.A § 12101 et seq. (ADA). This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

5. Venue is invoked pursuant to 28 U.S.C. § 1391 and is proper in this Court.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On or about July 13, 2015, Plaintiff filed a Charge of Discrimination against the Defendant with the U.S. Equal Employment Opportunity Commission (EEOC), Charge No. 531-2015-01828. This charge related to Mr. Baker's ADEA claim against Defendant. Thereafter, On or about September 14, 2015 Plaintiff filed a second Charge of Discrimination against Defendant with the EEOC, Charge No. 531-2015-02246. On or about March 1, 2017, the EEOC issued Plaintiff a notice of right to sue letter. Plaintiff files this complaint within ninety (90) days after receiving the notice of the right to sue from the EEOC.

7. Plaintiff has therefore exhausted all required administrative remedies. Plaintiff now timely files this lawsuit to vindicate his rights.

## IV. FACTUAL ALLEGATIONS PERTINENT TO ALL COUNTS

8. On or about July 27, 2014 Plaintiff began his employment at Defendant as a cook in the Defendant's Banquet and Employee Dining Room. At some point, Plaintiff was given the position of lead cook by one of the Defendant's managers, Mr. Eric Jones ("Mr. Jones").

9. Throughout Plaintiff's employment at Defendant, Plaintiff performed his job duties satisfactorily, and consistent with the legitimate expectations of Defendant.

10. From March 2015 through June 2015, Plaintiff was subject of repeated harassment from the Sous-Chef Mr. Michael Sioris, when Mr. Sioris (a bakery supervisor for Defendant), made comments about Mr. Baker's age, including: "You are too old to hold your position". Moreover, Mr. Sioris had inappropriately touch Plaintiff's backside and admitted to it during Defendant's HR Department's investigation of the incident.

11. After over a month of Mr. Sioris harassment towards Plaintiff, which began in March 2015, Plaintiff complained to Mr. Jones about Mr. Sioris harassment. Mr. Jones told Plaintiff that 'he would take care of it'. However, nothing was ever done related to this complaint and Mr. Sioris continued to harass Plaintiff up to and through the time of the investigation into the 06/11/2015 incident. Plaintiff further complained to his immediate supervisors, Mr. Darryl Bonds and Mr. Darren Crawford about Mr. Sioris's continued harassment of Plaintiff. In response, however, Mr. Bonds told Plaintiff that 'it is out of his hands [,] management had taken over'. Thereafter, Plaintiff complained of Mr. Sioris' harassment of Plaintiff to Defendant's HR Department. Specifically, Plaintiff spoke with Defendant's Vice President of Operations, Mr. Alex Dixon, and Defendant's Vice President, Jackie Grace. However, Defendant took no corrective

action regarding Mr. Sioris harassment of Plaintiff. In fact, Mr. Dixon and Ms. Grace avoided Plaintiff following Plaintiff's complaint about Mr. Sioris's harassment.

12. On or about June 11, 2015, Plaintiff complained to Defendant's Human Resources Department ("HR Department") that Mr. Sioris inappropriately touch Mr. Baker's his backside. Moreover, in the complaint, Plaintiff stated that Mr. Sioris made more derogatory comments about Plaintiff's age, including having called Plaintiff an "old ass man". Defendant's HR Department's representative, Lori Goldenthal ("Ms. Goldenthal"), investigated the 06/11/2015 incident, during which time, Mr. Sioris admitted that he inappropriately touched Plaintiff's backside.

13. After Plaintiff complained about Mr. Sioris' harassment towards Plaintiff, to Mr. Jones, Mr. Bonds, Mr. Crawford, Mr. Dixon, and Ms. Grace, Plaintiff was demoted from lead-cook to prepping food, which is a less favorable work schedule and work assignment. Specifically, from July 2014 through July 2015, Plaintiff's work schedule was from 6:00am to 2:00pm. After Plaintiff complained above about Mr. Sioris' harassment, Plaintiff's work schedule was changed to 7:30am to 3:00pm. Upon learning of the work schedule change, Plaintiff asked his supervisor, Mr. Bonds, why Plaintiff's work schedule was changed. Mr. Bonds said, 'I only do what my bosses tell me'. Moreover, the change in Plaintiff's work schedule reflected the fact that Plaintiff was demoted from a lead cook to a "prep" cook. This change in position substantially affected Plaintiff's ability to receive overtime hours and pay, and is considered a demotion.

14. On or about August 18, 2015 Defendant was notified of Plaintiff's disability and Plaintiff's request for reasonable accommodation, (given leave under the FMLA).

15. On or about September 4, 2015, related to Plaintiff's reasonable accommodation, Plaintiff submitted a FMLA leave requests to Defendant for September 4th and 5th, 2017, as sick days off from work. Defendant failed to respond to Plaintiff's FMLA leave requests. Thereafter,

on September 8, 2015, Defendant denied Plaintiff's FMLA leave requests and gave Plaintiff a written disciplinary action for being out of work on September 4 and September 5, 2015. In addition to the written disciplinary action, Defendant gave Plaintiff two negative points to be counted towards the absences in Defendant's "point system" policy.  The accumulation of certain number of points leads to the termination of employment with Defendant.

16. In March 2016, Mr. Baker felt compelled to resigned from his employment at Defendant, because the working conditions became unbearable for Plaintiff.  Defendant's conduct towards Plaintiff, effectively resulted in the constructive discharge of Plaintiff from Defendant's employment.

17. As a direct and proximate result of the conduct stated in the preceding paragraphs, Plaintiff suffered the following injuries; (1) Plaintiff was constructively discharged from Defendant in March 2016; (2) Plaintiff received a demotion from a lead cook to a cook prep; (3) Plaintiff lost his ability to receive overtime hours because of his demotion from a lead cook to a cook prep; (4) mental anguish, stress & anxiety, humiliation, and harm to his reputation.

## IV.   COUNT ONE
**(Retaliation in violation of Title VII)**
**(Against Defendant)**

18. Plaintiff incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

19. On multiple occasions, Plaintiff engaged in protected activities when Plaintiff complained to his supervisors, Mr. Jones, Mr. Bonds, Mr. Crawford, Mr. Dixon, and Ms. Grace throughout the months of at least April 2015 – June 2015, and Plaintiff's 06/11/2015 complaint to Defendant's HR Department.

20. In response to Plaintiff's protected activities, Defendant took adverse employment action against Plaintiff by; (1) demoting Plaintiff from lead cook to prep cook which terminated Plaintiff's ability to obtain overtime hours.

21. As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff suffered and continues to suffer losses of earnings, equity, and other employment benefits and has incurred other economic losses.

22. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered substantial emotional distress, humiliation, shame, and embarrassment, all to the Plaintiff's damage in an amount to be proven at the time of trial, in addition to injuries referenced in paragraph 17 of the complaint.

## V.  COUNT TWO
### (Failure to Accommodate in Violation of the ADA)

23. Plaintiff incorporates all preceding and following paragraphs hereto, as though fully set forth herein.

24. Plaintiff is a disabled person as intended by the ADA because Plaintiff was perceived to be disabled by Defendant and therefore Plaintiff qualifies as a person who is considered "disabled" under the ADA.

25. Plaintiff is otherwise qualified to perform the essential functions of her job as a lead cook and a prep cook for Defendant, with or without reasonable accommodation.

26. On September 8, 2015, and as early as August 18, 2016, Defendant knew that Plaintiff had a disability and required the reasonable accommodation of leave under the FMLA. Defendant denied Plaintiff's FMLA leave requests for September 4 and September 5, 2015. Instead of providing Plaintiff reasonable accommodation, Defendant issued Plaintiff a written disciplinary action for being out of work on September 4 and September 5, 2015. In addition to

6

the written disciplinary action, Defendant gave Plaintiff two negative points to be counted towards the absences in Defendant's "point system" policy, which could eventually lead to Plaintiff firing.

27. Defendant knowingly, intentionally, recklessly or negligently discriminated against Plaintiff because of his perceived disability. Defendant failed to provide a reasonable accommodation to Plaintiff, who is a qualified person under the ADA, which Defendant had knowledge of as early as August 18, 2015. Plaintiff was capable of performing the duties of his position as a lead and a prep cook, with or without the reasonable accommodation(s). Furthermore, granting Plaintiff the requested FMLA leave (September 4 and September 5, 2015) would not have resulted or caused Defendant undue hardship.

28. As a direct, foreseeable and proximate result of Defendant's unlawful actions, Plaintiff suffered and continues to suffer losses of earnings, equity, and other employment benefits and has incurred other economic losses.

29. As a direct, foreseeable, and proximate result of Defendant's unlawful actions, Plaintiff has suffered substantial emotional distress, humiliation, shame, and embarrassment, all to the Plaintiff's damage in an amount to be proven at the time of trial, in addition to injuries referenced in paragraph 17 of the complaint.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this court enter judgment in Plaintiff's favor and grant Plaintiff the maximum relief allowed by law, including, but not limited to:

(a) compensatory damages of One Million Dollars ($1,000,000.00);

(b) back pay and front pay;

(c) punitive damages against Defendant;

(d) a declaration that Defendant's actions violated Title VII and the ADA; and

(e) attorney's fees, costs both pre-judgment and post-judgment interest, and any such other relief as are just and equitable under the circumstances.

## XII.    JURY DEMAND

Plaintiff requests a trial by jury on all issues and counts stated herein.

Respectfully Submitted,

*/s/ George Rose*

_____
George A. Rose, Esquire #26086
Rose Law Firm, LLC
200 E. Lexington Street, Suite 1305
Baltimore, MD  21202
Telephone: 410-727-7555
Facsimile: 443-320-0962
Email: grose@roselawfirm.net